IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ERIKA YOUNG, LESLIE WILLIAMS-  )
OGLETREE, EVELYN SPARKS, ELISHA )
GUEST, MARIAM MASKHARASHVILI,   )
ANNE CIAGLIA, and JOANN MCGILL, )
                                )   No. 06 C 1081
        Plaintiffs,             )
                                )
    v.                          )
                                )
C.H. ROBINSON WORLDWIDE, INC.,  )
                                )
        Defendant.              )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Erika Young, Leslie Williams-Ogletree, Evelyn Sparks, Elisha Guest, Mariam Maskharashvili, Anne Ciaglia, and JoAnn McGill have filed a complaint alleging hostile work environment under Title VII, 42 U.S.C. § 2000e et seq., against defendant C.H. Robinson Worldwide, Inc. ("CHRW"). Defendant has moved for summary judgment against plaintiff Anne Ciaglia and moved to strike portions of plaintiff's statement of additional facts. For the following reasons, the defendant's motions are denied.

I.

CHRW is a transportation logistics company with approximately 160 branches nationwide. In June 1999, Ciaglia began working as an account manager for CHRW's branch in Burr Ridge, Illinois. Plaintiff's responsibilities included managing the use of equipment needed to take the freight loads to or from trucks that were

assigned to her "zone" — the Southeast pod. Plaintiff describes the office as consisting of a number of "pods"[1] or joint desks within large cubicles. There were no physical barriers separating the desks or the people working within the same pod, and among pods the walls were short, about three feet tall. In light of the physical design of the office, employees could easily see each other's computer monitors. Plaintiff believed the office was designed to be open and to foster collaboration. At the time plaintiff began working at the CHRW branch there were 65 employees, and approximately six or seven were women.

In 2001, plaintiff began working in another pod with Stu Surrell, Mark Lass, and Kevin Haas and worked on a specific account for Georgia Pacific. In 2002, plaintiff moved to another pod with John Karas and Maria Maskaharashivili and worked on the Newell Rubbermaid account. According to plaintiff, Jim Butts was the branch manager but she worked under Haas, who was the transportation manager, and Dan Holden, the operations manager. In 2002, Butts was promoted and James "Norm" Newman became the new branch manager. Also in 2002, Haas was promoted and transferred to a branch in North Carolina. In April 2003, plaintiff left CHRW.[2]

---

[1] Plaintiff also used the term pod to refer to groups of account managers handling a specific account.

[2] Prior to plaintiff's departure, sometime around the end of 2002 and the beginning of 2003, the office relocated to Willowbrook, Illinois.

2

Plaintiff bases her hostile work environment claim on the conduct of her male co-workers, whom she testified viewed, disseminated, and commented on pornographic images on their computers. According to plaintiff, male employees would gather around a computer and discuss pornographic materials in the workplace on a regular basis. During her time working in the same pod as them, plaintiff described how Lass and Haas would discuss pornographic images and invited her to view them. Aside from the pornographic materials, plaintiff claims to have witnessed male co-workers use derogatory language, such as "slut," "whore," and "bitch" to refer to her, in objectifying female candidates for employment, and commenting on the size of a co-worker's breasts.

II.

Summary judgment is appropriate where the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 787 (7th Cir. 2007); FED. R. CIV. P. 56(c). I must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

III.

Title VII, 42 U.S.C. § 2000e-2(a)(1) makes it unlawful "for an employer . . . to discriminate against any individual with respect

to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." In order to make a prima facie case for a hostile work environment, a plaintiff must show that:

> 1) she was subjected to unwelcomed harassment; 2) the harassment was based on her sex; 3) the harassment was sufficiently severe or pervasive so as to alter the condition of her employment and create a hostile or abusive atmosphere; and 4) there is a basis for employer liability.

*Boumehdi*, 489 F.3d at 788 (citing *Kampmier v. Emertius Corp.*, 472 F.3d 930, 940 (7th Cir. 2007)); *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 505 (7th Cir. 2003). CHRW argues it is entitled to summary judgment of plaintiff's hostile work environment claim on the grounds that (1) the conduct at issue was not severe or pervasive enough to create a hostile work environment, and (2) there is no basis for holding CHRW liable.[3]

A. Severity and Pervasiveness

Sexual harassment is actionable under Title VII if it is "'both subjectively and objectively so severe or pervasive' as to alter the conditions of [plaintiff's] employment and create an abusive work environment.'" *Whittaker v. N. Ill. Univ.*, 424 F.3d

---

[3]Defendant did not raise any arguments concerning whether plaintiff's condition of employment was altered until its reply brief. This is improper. *See, e.g, Amerson v. Farrey*, 492 F.3d 848, 852 (7th Cir. 2007) ("Arguments raised for the first time in a reply brief are waived."); *DiChristofano v. Neiman Marcus Group, Inc.*, No. 07 C 2250, 2007 WL 3231424, at *5 (N.D. Ill. Oct. 30, 2007) (Kendall, J.) (same).

4

640, 645 (7th Cir. 2005) (quoting *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 975 (7th Cir. 2004)). In determining whether a workplace is objectively hostile, I must consider the totality of the circumstances, including the frequency and severity of the discriminatory conduct; whether it was physically threatening or humiliating, as opposed to a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance. *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998); *Boumehdi*, 489 F.3d at 788. The Seventh Circuit has stated "that there is no magic number of incidents required to establish a hostile environment." *Boumehdi*, 489 F.3d at 789 (citing *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 808 (7th Cir. 2000)).

With respect to frequency, defendant acknowledges that plaintiff has purportedly identified approximately 30 or more incidents of conduct she complains of as harassment, over a period of three years and approximately nine months (June 1999 through April 2003). These include 12-15 instances of co-workers watching and commenting on pornography displayed on a computer within plaintiff's sight; five or six occasions on which male co-workers improperly commented on the physical attributes of female job candidates; Lass specifically commenting on the size of a female co-worker's breasts on a single occasion; being called a bitch on five to six occasions; an email where a male co-worker described another male co-worker as "Anne Lover"; Haas calling her a slut and

5

freight whore when insinuating she slept with a client. Plaintiff disputes the number of specific incidents identified is higher, and points to plaintiffs deposition testimony in which she provides that her male co-workers would watch pornography on computers "monthly, if not more frequently" while she worked in the Burr Ridge location.

Defendant argues the conduct in question is not severe, instead only "occasional vulgar banter, tinged with sexual innuendo, of coarse and boorish workers." *See Baskerville v. Cullingan Int'l Co.*, 50 F.3d 428, 430-31 (7th Cir. 1995). A review of the collective conduct suggests the existence of a question of material fact on this issue. With respect to pornographic images, plaintiff describes one incident in which she viewed male co-workers openly viewing and discussing a cartoon depicting bestiality, which was on display on a computer. Plaintiff also saw her co-workers viewing picture of nude college girls asleep in provocative positions and with their skirts up. Even when plaintiff did not view the images on the computers, she could hear her male co-workers commenting on the images and the physical attributes of the women depicted in those images (of this, considerable discussion centered on chest sizes). While working in the same pod as Haas and Lass, Haas asked plaintiff if she wanted to see the pornographic images. Plaintiff declined and said it was disgusting, however, Haas and other co-workers would continue to

6

discuss the pornographic images in close proximity to her and to get a reaction from her.

Plaintiff also identifies other offensive and demeaning language used by her co-workers. In particular, plaintiff recalls being called a bitch by at least 3 different male co-workers and as a "pretty normal practice." Plaintiff also heard co-workers use the term "cunts" to refer to women. On one occasion, plaintiff heard Haas ask another male employee "did you see that girl's tits?" in reference to a female co-worker. Male employees would also make improper comments about the physical appearances of female job applicants, including discussing the size of their chests, whether they had a "nice rack" or "nice legs."

Plaintiff also heard her co-workers comment on a female employee's pregnancy and how she "was always out of the office because she was pregnant." She also viewed an inappropriate email about the pregnant employee's inability to work. Plaintiff also had to listen to co-workers discuss stories about a strip club they visited on a business trip - the same trip she was denied participation in so that they could attend the strip club.

Haas and other co-workers also made improper insinuations about plaintiff's sexuality in the context of her work. On one occasion, Haas commented on plaintiff staying out later than her co-workers with a male client by announcing "you were out with him a lot later . . . you little slut . . . you freight whore." In

7

another instance, plaintiff complains of having received a degrading email in which a male co-worker referred to another employee as an "Anne Lover" (Anne being plaintiff's first name) because that employee assisted plaintiff while on the job. Plaintiff felt the implication was that she had obtained assistance from that employee due to her sexuality. It is not unreasonable to infer that these comments would interfere with plaintiff's ability to do her job, as she was improperly singled out - specifically as a slut or a whore - for spending time alone with clients or as engaging in sexual acts with other employees in order to gain assistance. Moreover, plaintiff was told she was denied the opportunity to attend a business trip so that the male co-workers could visit a strip club with the clients. While plaintiff managed to receive positive performance reviews by CHRW, she complains she struggled to remain focused at work and to gain access to clients.

In light of these collective facts, presented mainly through plaintiff's testimony and corroborated to some extent by a female co-worker's declaration, plaintiff has shown the existence of a triable issue with respect to whether the workplace was objectively hostile. With respect to severity, *Baskerville* explained that "[d]rawing the line" on this issue is not straightforward and that

> [o]n one side lie sexual assaults; other physical contact, whether amorous or hostile, for which there is no consent express or implied; uninvited sexual solicitations; intimidating words or acts; obscene language or gestures; pornographic pictures. . . . On the other side lies the occasional vulgar banter.

50 F.3d 430-31. While the conduct identified does not involve touching, which is considered less severe than verbal behavior, id.; see also Worth v. Tyer, 276 F.3d 249, 268 (7th Cir. 2001) (citations omitted), plaintiff has identified multiple instances of obscene language and pornographic pictures which male co-workers specifically directed at her or specifically asked plaintiff to view, which when taken in the best light to plaintiff create an issue of material fact.

A triable issue also exists with respect to whether plaintiff had a subjective belief that the workplace was intolerable. Plaintiff testified she was "disgusted" by the emails and did not hide her reaction from her co-workers. She claims to have suffered from stress and physical manifestations of it — such as chest pains, getting sick more often, and crying on a weekly basis — as a result of her hostile work conditions. And while defendant is correct to argue that her failure to contact management or make any complaints, while employed, about the conduct in question weighs against plaintiff's assertion, it is not fatal with respect to her subjective belief that her environment was hostile because (1) plaintiff claims she was afraid she would have been retaliated against if she complained, (2) she observed her immediate supervisor, Haas, engage in this conduct, and (3) she insists that she was not provided sufficient training or information about how the company would handle such complaints. When all this is taken

in the best light to plaintiff, there is a genuine issue of material fact.

## B. Employer Liability

Employers are strictly liable for harassment by a supervisor. *Rhodes*, 359 F.3d at 505. A supervisor is "someone with the power to *directly* affect the terms and conditions of the plaintiff's employment." *Id.* at 506 (emphasis in original). An employee who merely has the "authority to oversee aspects of another employee's job performance" is not considered a supervisor for purposes of Title VII. *Id.* If the individual responsible for the harassment is another employee but not a supervisor, the employer is liable if it was negligent in discovering or remedying the harassment. *Id.* In other words, an employer is liable for harassment by a co-worker if the employer "'knew or should have known' about the harassment and failed to take reasonable steps to remedy the harassment once it was on notice." *Wyninger*, 361 F.3d at 976 (quoting *Berry v. Delta Airlines, Inc.*, 260 F.3d 803, 811 (7th Cir. 2001)).

A triable issue of fact exists with respect to whether Haas had the power to directly affect the terms and conditions of plaintiff's employment. Both Butts and Newman, the branch managers, testified that as transportation manager, Haas worked directly beneath them on the corporate scale and was the person directly responsible for at least some of plaintiff's performance reviews. Both witnesses also testified that he had a say in

compensation decisions with respect to plaintiff, as well as hiring and firing of employees. Moreover, plaintiff testified that Haas managed the Georgia Pacific account and specifically denied her the opportunity to attend an event with clients. Plaintiff also testified that because Butts was out of the office so much, he relied heavily on the transportation and operation managers to manage the office in his absence.[4] When these facts are taken in the best light to plaintiff, along with defendant's failure to properly raise arguments on this issue, summary judgment is inappropriate. Accordingly, this issue is appropriate for trial.

IV.

Defendant has moved to strike a number of portions of plaintiff's statement of additional facts on the grounds that they are not sufficiently short and specific, or conclusory. I disagree with this characterization, therefore the motion to strike on those grounds is denied. More importantly, in deciding this motion for

---

[4] Defendant's opening brief did not raise any arguments contesting Haas' status as a "supervisor" instead arguing only that it was entitled to summary judgment because plaintiff did not "show the company knew or should have known of the alleged sexually hostile work environment and failed to take prompt remedial action." (Def. Op. Br. at 11.) In its reply brief, defendant concedes it did not move for summary judgment on the affirmative defense set forth in *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 759 (1998) in its opening brief. Defendant then attempts to contest Haas' supervisor status and invoke the *Ellerth* affirmative defense in its reply brief. This is improper, however, as arguments cannot be raised for the first time in a reply brief. *Amerson*, 492 F.3d at 852; *DiChristofano*, 2007 WL 3231424, at *5.

summary judgment I did not rely on any of the portions of the statement of additional facts that defendant sought struck on additional grounds. Accordingly, the motion to strike is denied as moot.

V.

For the foregoing reasons, defendant's motion for summary judgment and motion to strike are denied.

**ENTER ORDER:**

*/s/ Elaine E. Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: December 11, 2007